# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| HENRY JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 16 C 6988 |
| | ) | |
| JEFF KORTE, Warden at Western Illinois | ) | Judge John Z. Lee |
| Correctional Center, WEXFORD HEALTH | ) | |
| SOURCES, INC., DAVID BARNES, and | ) | |
| DR. ARTHUR DAVIDA, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

While Plaintiff Henry Johnson was an inmate at the Illinois Department of Corrections Northern Reception and Classification Center (NRC), he sustained injuries due to a fall. As a result of the purported lack of treatment of his injuries at the NRC, as well as at the Western Illinois Correctional Center (WICC), to which he was later transferred, Johnson has sued Defendants under 42 U.S.C. ¶ 1983 for deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Specifically, Johnson has sued David Barnes, a correctional officer at the NRC, Dr. Arthur Davida, a physician at the NRC, Jeff Korte, Warden of the WICC, and Wexford Health Sources (Wexford), a company responsible for providing medical care to Illinois inmates.

Defendant Korte has moved to sever the claims against him and transfer venue to the Central District of Illinois pursuant to Federal Rule of Civil Procedure (Rule) 21 and 28 U.S.C. § 1404(a). Defendant Wexford has moved to dismiss Johnson's claims under Rule 12(b)(6). For the following reasons, the Court grants Defendant Korte's motion to sever and transfer. Defendant Wexford's motion to dismiss is also granted.

## Factual Background[1]

During all times relevant to this litigation, Johnson was an inmate in the custody of the Illinois Department of Corrections. 3d Am. Compl. ¶ 1, ECF No. 1. When he resided at the NRC, Johnson slipped and fell in the holding pen as he waited for his court appearance on June 22, 2015. *Id.* ¶¶ 9, 11. As a result, he suffered injuries to his side and back. *Id.* After the incident, Defendant David Barnes prepared an Offender Injury Report. *Id.* ¶ 6.

After his court appearance, Johnson was taken to the health care unit at the NRC. *Id.* ¶¶ 15–17. According to Johnson, Dr. Arthur Davida took an X-ray and told him that there was a bone protruding from his side that needed to be put back in place. *Id.* ¶ 17. Dr. Davida gave Johnson Tylenol, which did nothing to alleviate the pain. *Id.* ¶ 18.

Johnson was then transferred to the Western Illinois Correctional Center ("WICC"). *Id.* ¶ 19. Johnson notified WICC staff members of his painful medical condition. *Id.* The staff provided Johnson medication, but this too was ineffective at treating his pain. *Id.* ¶ 20. Johnson requested further treatment for his pain and injury, but his requests were denied. *Id.* ¶ 21.

Several months after his transfer to the WICC, an unidentified doctor X-rayed Johnson's side and told him the protrusion was "fat gristle," not bone. *Id.* ¶¶ 22–23. Johnson has not received any treatment other than Tylenol, and he continues to suffer from serious pain, which has significantly impeded his ability to sleep. *Id.* ¶¶ 24–26. While at the WICC, Johnson filed a grievance based on lack of medical treatment, which was denied. *Id.* ¶ 27.

---

[1] For purposes of ruling on Defendants' motions to dismiss, the Court assumes "all well-pleaded allegations are true and draw[s] all reasonable inferences in the light most favorable to the plaintiff." *Manistee Apartments, LLC v. City of Chi.*, 844 F.3d 630, 633 (7th Cir. 2016).

## Analysis

I.  **Defendant Korte's Motion to Sever**

Defendant Korte first moves to sever Johnson's claim against him. Mem. Supp. Mot. Sever & Transfer at 3–4, ECF No.48. A district court has "broad discretion" in deciding "whether to sever a claim under Rule 21." *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000). "As long as there is a discrete and separate claim, the district court may exercise its discretion and sever it." *Id.* "[D]iscrete and separate" means that "one claim must be capable of resolution despite the outcome of the other claim." *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006). In so doing, a court should consider severance "in the interest of judicial economy and to avoid prejudice." *Vermillion v. Levenhagen*, 604 F. App'x 508, 513 (7th Cir. 2015).

The claim against Defendant Korte arises from events at the WICC, while the claim against Defendants Barnes and Davida arises from events at the NRC. 3d Am. Compl. ¶¶ 9, 19. The parties disagree as to whether Johnson's treatment at different IDOC facilities impacts the motion for severance.

Johnson argues that the Defendants are joined together in a single claim for deliberate indifference, albeit spanning multiple locations. Pl.'s Mem. Opp'n Mot. Sever & Transfer at 2, ECF No. 60. Korte counters that the claim against him is discrete and separate in time, place, and circumstances as compared to the claim against Defendants Barnes and Davida. Mem. Supp. Mot. Sever &Transfer at 4.

Two recent cases issued by district judges in this Circuit provide helpful guidance to the question posed here. In *Young v. Obaisi*, the plaintiff alleged that the wardens, medical directors, and Wexford employees at two different prisons, as well as an outside orthopedic specialist, were

3

deliberately indifferent to his knee injury. No. 15-cv-2412, 2015 WL 8013437, at *2 (N.D. Ill. Dec. 7, 2015). One of the wardens and Wexford moved to sever and transfer the claims against them. *Id.* at *1. The *Young* court denied the motion because the same outside orthopedist served both prisons. The Court emphasized that "[t]he key witness in the case–the outside orthopedist–works here in Chicago; the doctor would have to testify twice (and at great inconvenience in the Central District) if the claims were severed." *Id.* at *5.

In *Malik v. Rankin*, the plaintiff alleged that medical service providers and prison administrators at four different prisons were deliberately indifferent to his gastrointestinal and ankle conditions. No. 15-cv-84, 2015 WL 1004019, at *3 (S.D. Ill. Mar. 4, 2015). The court granted the defendants' motion to sever because the claims were "capable of resolution independently" in that the plaintiff's treatment "involve[d] personnel at four different prisons." *Id.* at *6. The *Malik* court held that severance would not prejudice the plaintiff because, besides his ailments, nothing linked his claims against one prison and its medical staff to his claims other prisons and its medical staff. *Id.*

The circumstances in this case more closely resemble those in *Malik* than *Young*. In contrast to *Young*, Johnson does not assert a claim against an outside medical professional, who functions as a common denominator between his treatment at the two prisons. Rather, as in *Malik*, the facts underlying Johnson's claim against the Defendants at the NRC would not overlap with the facts related to his claim against the Defendants at the WICC. Except for Johnson, the witnesses will be different in each case.

Furthermore, as Korte correctly notes, Johnson seeks injunctive relief that Korte (and WICC) provide him with appropriate medical treatment for his injury. 3d Am. Compl., Prayer for Relief ¶ B; Mem. Supp. Mot. Sever & Transfer at 4. Such injunctive relief would be entirely

independent from the compensatory damages sought by Johnson against Defendants Barnes and Davida, who are staffed at the NRC.

For these reasons, the Court concludes that the claims against Defendant Korte, Warden of the WICC, are discrete and separate from the claims against Defendants Barnes and Davida. Each claim is capable of being resolved independently of one another. The motion to sever claims against Korte is therefore granted.

## II. Defendant Korte's Motion to Transfer

Defendant Korte also requests that the claims against him be transferred to the Central District of Illinois. A district court may transfer a civil action "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Transfer is allowed if "(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interests of justice." *Coffey v. Van Doren Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). A court may use its discretion in considering the convenience and fairness of transfer to each party. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010).

The parties presume that venue is proper in both the Northern District and Central Districts. Accordingly, the Court focuses on the convenience and the interest of justice factors.

### A. Convenience Factors

With regard to convenience, courts consider five factors relating to the private interests of the parties and witnesses: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Body Sci. LLC v. Boston Sci. Corp.*, 846 F. Supp. 2d 980, 992 (N.D. Ill. 2012) (citing Research Automaton, 626 F.3d at 978).

5

The first of these private-interest factors creates a strong presumption in favor of the plaintiff's choice of forum if that forum is where the plaintiff resides. *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (internal quotation marks omitted) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."); *Taylor v. Midland Funding, LLC*, 94 F. Supp. 3d 941, 945 (N.D. Ill. 2015). The party seeking to transfer venue bears "the burden of showing that 'the transferee forum is clearly more convenient.'" *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (quoting *Coffey*, 796 F.2d at 1293). "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Research Automation*, 626 F.3d at 979.

First, Johnson admits that a plaintiff's choice of forum is not absolute, but he asks the Court to respect his choice of litigating his claims here. Pl.'s Resp. Br. at 4. Korte argues that a plaintiff's choice of forum "has minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff." *See Chi., Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955). For reasons provided *supra*, Johnson's claim against Korte arises from alleged actions occurring entirely at WICC, so this factor weighs in favor of transfer.

Second, Johnson argues that his injury is continuous and therefore the situs of events occurred at both the NRC and the WICC. Pl.'s Resp. Br. at 2. As discussed above, however, the Court is not persuaded by this argument. The WICC is the only location where Johnson alleges that jail staff exhibited deliberate indifference under Korte's supervision. Korte is thus correct in asserting that the Northern District has little connection to Johnson's claim against Korte and that the Central District is the situs of all the material events regarding that claim. *See* Mem. Supp. Mot. Sever & Transfer at 6. This factor weighs heavily in favor of transfer.

6

Johnson does not address the "relative ease of access to sources of proof" factor. According to Korte, Johnson's medical records regarding his treatment at WICC are still located at WICC, meaning ease of access to evidence also weighs in favor of transfer to the Central District. *Id.* The location of documents, however, is given minimal consideration due to modern digital imaging capabilities. *Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F. Supp. 2d 836, 840 (N.D. Ill. 2009). This factor thus weighs neither in favor of nor against transfer.

Johnson does not argue that any witnesses will be inconvenienced by a transfer. Korte, on the other hand, asserts that all potential witnesses for Johnson's claims arising from events at WICC likely live in or near Mount Sterling, Illinois, favoring transfer. Mot. Sever and Transfer at 6. "[T]he convenience of witnesses who are within a party's control, such as a party's employees, is far less important than the convenience of non-party witnesses." *AL & PO Corp. v. Am. Healthcare Capital, Inc.*, No. 14 C 1905, 2015 WL 738694, at *4 (N.D. Ill. Feb. 19, 2015) Korte has not asserted that any non-party witnesses will be inconvenienced. As a result, this is a neutral factor. On balance, however, the Court finds that the private interest factors weigh heavily in favor of transfer.

### B. Interest of Justice Factors

In determining whether the public interest favors transfer, courts weigh factors such as "docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." *Research Automation*, 626 F.3d at 978 (citations omitted).

Korte notes that WICC is in the Central District, which has greater familiarity with WICC's policies because most claims arising from incidents at the WICC are handled there.

7

Mot. Sever and Transfer at 7. But the federal courts in the Northern and Central Districts are equally familiar with the relevant law and are equally capable of applying that law to the facts of the case. Accordingly, the Court finds that this factor is neutral, and the public interest analysis ultimately hinges on the speed to trial, the desirability of resolving controversies in each locale, and the relationship of each community to the controversy.

In this regard, Korte asserts that the Central District is able to provide a speedier trial than the Northern District. *Id.* The Court agrees. According to Federal Court Management Statistics, the time from filing to trial in the Central District takes about 35 months, while the Northern District takes about 41 months. *Federal Court Management Statistics*, United States Courts (March 2017), http:// www.uscourts.gov/sites/default/files/data_tables/fcms_na_ distprofile0331.2017.pdf. This factor favors transfer.

Furthermore, the desirability of resolving controversies in each locale and the relationship of each community to the controversy also weigh in favor of transfer. The Central District of Illinois has an important connection to, and interest in, resolving the controversy because the WICC is located there and any verdict may affect WICC's employees in that district. Although Johnson argues that transferring the claims against Korte to the Central District will require empaneling two juries, Pl.'s Resp. Br. at 4, the interests of the Central District in resolving controversies arising out of prison facilities within its jurisdiction outweigh the added costs of two trials. In toto, the public interest factors also bear heavily in favor of transfer.

Having considered the relevant factors, the Court concludes that overall, both the convenience and interest of justice factors weigh decidedly in favor of transferring venue of the claim against Korte to the Central District. Accordingly, the Court grants Defendant Korte's motion to transfer the claim against him to the Central District of Illinois.

After the claim against Defendant Korte is transferred, the Court instructs Johnson that he must file an *in forma pauperis* application in the Central District of Illinois. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits . . . to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act.). He may also file a motion for recruitment of counsel in the Central District of Illinois if he wishes to be represented by an attorney.

### III. Defendant Wexford's Motion to Dismiss

Wexford has moved to dismiss Johnson's complaint for failure to state a claim. Mem. Law Supp. Mot. Dismiss at 2, ECF No. 34. To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Further, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). The complaint must also contain a "statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotation marks omitted).

"[J]ust as a municipal corporation is not vicariously liable upon a theory of *respondeat superior* for the constitutional torts of its employees, *Monell v. Department of Social Services*, 436 U.S. 658, 694 . . . (1978), a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." *Iskander v. Vill. of Forest Park*, 690 F.2d 126,

128 (7th Cir. 1982).[2] Rather, a private corporation may only be liable under § 1983 if it caused the plaintiff's constitutional injury through "(1) the enforcement of an express policy of the [municipality]; (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Latuszkin v. City of Chi.*, 250 F.3d 502, 504 (7th Cir. 2001). The policy or practice "must be the direct cause or moving force behind the constitutional violation." *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (internal quotation marks omitted). *Monell* claims in which allegations of a policy pertain exclusively to the plaintiff are typically dismissed. *See, e.g., Jones v. Feinerman*, No. 09 C 03916, 2011 WL 4501405, at *6 (N.D. Ill. Sept. 28, 2011) (dismissing because allegations are limited only to the plaintiff, and "do not represent a pattern of deliberate indifference").

According to Wexford, Johnson fails to state a claim because his allegations do not plausibly support the existence of a policy, practice, or action by a person with final policymaking authority. Mem. Law Supp. Mot. Dismiss at 5. Johnson, in turn, asserts that an unconstitutional policy may be inferred from his allegation of a "series of bad acts." Pl.'s Resp. Br. at 5, ECF No. 59.

Having reviewed the allegations in the third amended complaint and construing all reasonable inferences in Johnson's favor, the Court concludes that he has not stated a plausible *Monell* claim against Wexford. Although Johnson alleges that Wexford employees provided inadequate care for his medical condition, Johnson does not explain how any of his allegations pertain to an express policy, a widespread practice, or any action by a final policymaker.

---

[2] Johnson acknowledges that there is no respondeat superior liability under the current law for § 1983 claims against private corporations, but nonetheless argues for its application. Although the Seventh Circuit has questioned this rule, see *Shields v. Illinois Department of Corrections*, 746 F.3d 782, 789–93 (7th Cir. 2014), *Iskander* remains the governing law.

Johnson concedes that there is "no evidence of communication or coordination" between the different Wexford clinicians who treated him. *Id.* at 5–6. Accordingly, the Court dismisses Johnson's claims against Wexford at both the NRC and the WICC without prejudice.

## Conclusion

For the reasons provided in this Memorandum Opinion and Order, Defendant Jeff Korte's motion to sever and transfer [47] is granted. The Clerk of Court is directed to sever the deliberate indifference claim against Defendant Korte and any John and Jane Doe Defendants at the WICC from this case and to transfer the claims to the United States District Court for the Central District of Illinois forthwith. Plaintiff Johnson's assigned counsel is hereby relieved of the assignment with regard to the severed claims. Once the claim is transferred, Johnson must file an *in forma pauperis* application in the Central District of Illinois. He may also file a motion for appointment of counsel in the Central District of Illinois if he wishes to be represented by an attorney there.

Defendant Wexford's motion to dismiss [33] is granted. Plaintiff's claims against Wexford are dismissed without prejudice.

Plaintiff must file a Fourth Amended Complaint that comports with the Court's rulings within fourteen days. If Plaintiff does not file a timely Fourth Amended Complaint, the Court will dismiss this case with the understanding that Plaintiff no longer wishes to pursue this litigation.

**IT IS SO ORDERED.**   ENTERED   8/29/17

_____
**John Z. Lee**
**United States District Judge**